### In re STRASCHNOW et al.

(Circuit Court of Appeals, Second Circuit. June 14, 1910.)

No. 305.

1. USURY (§ 115*)—PAROL EVIDENCE—WRITTEN CONTRACT—VALIDITY.

Where a contract evidencing a loan of money and the employment of the lender was attacked for usury, parol evidence of the conversations of the parties prior to the execution of the contract was not objectionable on the ground that all prior negotiations must be deemed merged in the written contract.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 326; Dec. Dig. § 115;* Evidence, Cent. Dig. § 2029.]

2. BANKRUPTCY (§ 467*)—REVIEW OF EVIDENCE.

The Circuit Court of Appeals, on an appeal in bankruptcy proceedings, is not required to weigh testimony on the printed record, where the questions of fact are doubtful, and it is desirable that the facts be first passed on by the District Court or a referee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 467.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Ralph Straschnow and another, bankrupts. From an order confirming the report of a referee, directing the payment of dividends on the claim of Henry L. Ketcham, assignee of Eli Bernays, William H. Roberts appeals. Reversed and remanded.

The bankrupts carried on business in New York City under the name of "International Electrical and Engineering Company" and said Bernays was the father-in-law of the bankrupt Wiener. About April, 1908, the bankrupts borrowed of said Bernays the sum of $10,000 and executed an agreement, a copy of which is printed in the margin.†

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† This agreement made and entered into the 1st day of April, 1908, by and between Ely Bernays, residing in the city of New York, borough of Manhattan, state of New York, party of the first part, and-Ralph Straschnow and Felix F. Wiener doing business under the firm name and style of International Electric & Engineering Company, in the city of New York, borough of Manhattan, N. Y., parties of the second part, witnesseth:

First: The party of the first part agrees to loan to the parties of the second part at once the sum of $10,000 and the parties of the second part agree that said sum shall be repaid to the party of the first part on the 1st day of October, 1910.

Second: The parties of the second part agree to pay to the party of the first part interest on said sum of $10,000 at the rate of 6% per annum, such interest to be paid every three months.

Third: The parties of the second part engage the services of the party of the first part from the 1st day of April, 1908, to the 1st day of October, 1910, and the party of the first part agrees to serve said parties of the second part, the general nature of such services being general advice and assistance to be given by the party of the first part

The claim presented against the bankrupt estate by the assignee of Bernays was based upon this written agreement. The trustee moved to expunge the claim upon the ground, among others, that the agreement was invalid because it reserved a usurious rate of interest, and the question presented to the trustee was, as stated by him in his report, "whether the loan made by Eli Bernays to the bankrupts was tainted with usury, and whether, therefore, the claim of Henry L. Ketcham, the assignee of the claim, must be stricken out on motion of the trustee."

Upon the hearing before the referee that official first excluded proof of any conversations between the bankrupt and Bernays before the execution of said agreement, but finally permitted the trustee to show such conversations. In his report, however—which was confirmed upon the law and the facts by the District Court—the referee said: "I think it was error to have admitted evidence of conversations between the bankrupts and Bernays before the agreement was signed, and that all such conversations must be held to have been merged in the agreement."

The referee found that the evidence did not, in his judgment, establish the fact that the agreement was usurious. The statutes of New York, which determine the validity of the agreement, provide that the lawful rate of interest is 6 per cent., and that no person shall, directly or indirectly, take or receive a greater rate, and that all agreements reserving a greater rate shall be void.

Benno Loewy and Leon A. Malkiel, for appellant.

J. Garfield Moses and M. S. & I. S. Isaacs, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The statement of the referee in his report that conversations between the bankrupts and Bernays before the agreement was signed "must be held to have been merged in the agreement," and that they had been improperly admitted in evidence, was manifestly erroneous. Of course, as a rule of interpretation, parol evidence is not received to contradict or vary the terms of a written instrument; but, when the question is whether the instrument has any validity at all, such evidence is always received. The courts never permit form to shield illegality.

in the business conducted by the parties of the second part, by attending at their place of business from time to time and whenever necessary or requested and assistance with his knowledge and experience in the conduct of the business.

Fourth: The parties of the second part agree to pay to said party of the first part for such services one-third part of the net profits of the business conducted by them and which may be realized from April 1, 1908, and up to October 1, 1910, such one-third of the net profits however to be ascertained only after Mr. Ralph Straschnow and Felix F. Wiener have each received an allowance of $3,800 per annum and the further sum of $1,400 has been credited to their respective accounts on the books of the parties of the second part. The said payment is to be made to the party of the first part within eight weeks after October 1st, of each year, at which time a balance sheet is to be prepared by said parties of the second part.

Fifth: This agreement shall not be deemed to create a copartnership, or to vest in the party of the first part any proprietary rights in the assets of the business of the parties of the second part; he shall be deemed only a creditor and employee.

Sixth: In case the present term of partnership existing between Ralph Straschnow and Felix F. Wiener is continued from and after October 1, 1910, then and in that event the party of the first part is to have the option of continuing the said loan of $10,000 to the said copartnership under the same terms and conditions as are hereinbefore set out and for such period of time as the party of the first part may decide.

Seventh: Any differences which may arise between the two parties, or any misunderstanding arising out of the misconstruction of this agreement, shall be settled by an arbitration committee, of three members to be chosen as follows:

The party of the first part shall select one arbitrator, the parties of the second part shall select one arbitrator, and the two arbitrators thus selected shall agree upon a third arbitrator.

In witness whereof, the parties hereto have hereunto set their hands and seals this 1st day of April, 1908.

R. Straschnow. [L. S.]

Felix F. Wiener. [L. S.]

Witness: Curt Heinzmann.

Statutes cannot be evaded by shams and pretenses. Testimony concerning the conversations of the parties to a written agreement prior to its execution might be the best and most persuasive evidence to show that, instead of being what it purports to be, it is merely a cover for a usurious transaction.

It is true that, notwithstanding his erroneous view of the law, the referee stated in his report some of the testimony concerning conversations between the bankrupts and Bernays, and that he reached the conclusion that the agreement was not usurious. But it is impossible to say that the error of the referee was not prejudicial to the appellant. It was the duty of the referee to give careful consideration to the testimony concerning the antecedent conversations—that testimony was probably the most important in the case as showing the real transaction between the parties—and how can it be said that he gave it such consideration when he was of the opinion that it had been erroneously received and could not alter the written agreement?

The error of the referee calls for a reversal of the order, unless we are satisfied, from our own examination of the evidence as shown upon the record, that the ultimate conclusion reached by the referee was right. But, as already pointed out, the question in this case is whether the agreement was what it purports to be—in part a contract of employment—or was in fact intended as a cover for obtaining unlawful interest upon money loaned. The character of the transaction depends upon the intention of the parties, and the question of intent is one which, in ordinary actions, must be determined by the jury, and which, in a proceeding in bankruptcy, should be determined by a court or official having opportunity to see the witnesses and determine the weight to be given to their testimony. There is testimony in this case which, if credited, would warrant a jury—or other trier of the facts—in finding that the alleged contract of employment was an afterthought, intended to cover an agreement to pay a share of the profits of the business in addition to the legal rate solely for the loan of the money. On the other hand, we cannot say that the evidence is such as would have required a jury to reach such conclusion. Much would depend upon the credibility of the witnesses.

In some cases this court is required to weigh testimony upon the mere printed record; but it is obvious that we cannot do so to advantage, and that we should not do so unless necessary or unless the cases are entirely clear. In the present case the questions of fact seem doubtful, and we do not feel called upon to determine them. We think it much more desirable for all concerned that the District Court should, by itself or through a reference to a special master or to another referee, ascertain the intention of the parties to this agreement in the light of all proper evidence and determine its legality.

The order of the District Court is reversed, with costs, and the matter remanded for further proceedings in accordance with this opinion.